

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ian H. Levin | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4266 | **DATE** | 10/23/2002 |
| **CASE TITLE** | Myria Taffe vs. Illinois Department of Employment | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter memorandum opinion and order on defendant's motion for summary judgment. Plaintiff's motion to strike is granted in part and denied in part. Defendant's motion for summary judgment is granted and the cause is hereby dismissed with prejudice.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

3
number of notices

OCT 25 2002
date docketed

10/23/2002
date mailed notice

| SM | courtroom deputy's initials |
|---|---|

U.S. DISTRICT COURT

Date/time received in central Clerk's Office

**Document Number**

SM
mailing deputy initials

DOCKETED
OCT 2 5 2002

|  |  |
|---|---|
| MYRIA TAFFE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 98 C 4266 |
|  | ) Magistrate Judge Ian H. Levin |
| ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Myria Taffe ("Plaintiff") seeks recovery in a two-count Amended Complaint against Defendant Illinois Department of Employment Security ("Defendant") for retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and Illinois state law. Pending before the Court is Defendant's Motion for Summary Judgment. For the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment.

## BACKGROUND FACTS

Plaintiff is an African-American female. (Def.'s LR56.1(a)(3) St. ¶ 10.) In 1977, Plaintiff began working for Defendant in the position of Secretary I. (*Id.* ¶ 11.) Later, beginning in 1990, Plaintiff held the position of Methods and Procedure Advisor III. (*Id.*) As a Methods and Procedure Advisor III, Plaintiff was responsible for providing support services for the User Support Services division (i.e., User Support Subdivision Organization located in the Information Services Bureau) in the form of inventory control; data communication; and invoice, records and supply management. (*Id.* ¶¶ 12, 13, 26.)



Kenneth Piet was the Division Manager of the User Support Services division (Information Services Bureau) where Plaintiff worked. (Def.'s Ex. E, p. 16.) From May 1994 to April 1, 1996, Plaintiff reported directly to Paul Terrault, Manager of the User Support Subdivision Organization (Information Services Bureau). (*Id.* ¶ 28.) Beginning on April 1, 1996, however, Plaintiff reported directly to Alvin Greenspon, Senior Public Service Administrator (Information Services Bureau). (*Id.* ¶ 27.) Moreover, Terrault reported to Piet and Piet, in turn, reported to Dennis Devlin, Deputy Director of the Information Services Bureau. (*Id.* ¶¶ 29-30.)

On June 6, 1996, Plaintiff sustained a work-related injury while working for Defendant. (Def.'s LR56.1(a)(3) St. ¶ 214.) Plaintiff cut her leg on a metal assembly part in Defendant's copying area when a Xerox repairman was repairing the copier. (Pl.'s Ex. 17, June 10, 1996 memo to Paul Terrault.) The repairman had placed the metal assembly part next to a waste-paper container and Plaintiff lacerated her leg when she walked by the waste-paper container because the metal assembly part projected into her pathway. (*Id.*)

On August 23, 1996, Piet served Plaintiff with a copy of a Central Management Services ("CMS") form which indicated that she was to serve a fifteen-day (based on work days) suspension beginning on August 26, 1996. (Def.'s LR56.1(a)(3) St. ¶ 33.) In response to the notice of suspension, Defendant states that Plaintiff expressed to Piet, "Now I understand why postal employees shoot their managers."[1] (*Id.*) On August 26, 1996, however, Plaintiff disregarded her fifteen-day suspension order and reported to work. (*Id.* ¶ 36.) When Piet directed Plaintiff to go

---

[1]Plaintiff denies using the word "shoot;" however, she admits stating "Now I understand why postal employees do what they do." (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶¶ 33-35.) By making this statement, Plaintiff acknowledged in her deposition in this case that she was referring to how postal workers are "driven to do violence." (Ex. F, p. 179.) A year earlier, Plaintiff stated that this was not a threat of bodily harm to Mr. Piet, but merely to point out to him that she understood the pressures that perpetuate this kind of violence in the workplace. (Ex. D, p. 179.)

home, she argued with him and Piet told her he was just the messenger. (*Id.* ¶ 39.) In response, Defendant states that Plaintiff said, "You know what they do to the messenger don't you?"[2] (*Id.*)

Based on Plaintiff's comments, Piet decided to review her personnel records and became concerned when he learned that Plaintiff had threatened other employees in the past and had had numerous disciplinary actions taken against her. (Def.'s LR56.1(a)(3) St. ¶ 42.) For instance, Plaintiff had received the following discipline: (1) a written reprimand on January 11, 1996 for calling a co-worker a "big slab of pork" and telling her that she would "bust a cap in her ass;" (2) a one-day suspension on February 15, 1996 for insubordination for refusing to obey a supervisory directive not to interact with a co-worker; (3) a ten-day suspension (based on work days) on July 18, 1996 for failing to obey a supervisory directive to report her absences to her supervisor and for playing games on her personal, work computer; and (4) a written reprimand on August 14, 1996 for returning late from lunch. (Def.'s LR56.1(a)(3) St. ¶¶ 58, 59, 72-74, 148, 160.) More recently, on August 26, 1996, Plaintiff was given the subject fifteen-day suspension for insubordination for refusing to obey a supervisory directive to submit an original spreadsheet and working notes. (*Id.* ¶¶ 170, 174, 175, 191, 192.) Thus, based on a review of Plaintiff's personnel file and from what Piet had learned in various educational seminars, he determined that she fit the profile (based on a list of warning signs) of a dangerous employee. (*Id.* ¶ 43.) At that time, Piet believed he was personally in danger, and considered Plaintiff's comments to be threats. (*Id.* ¶ 44.)

Carol Niccolai, Labor Relations Manager, considered and struggled with the degree of severity of the discipline that Plaintiff should receive as a result of the threatening remarks she made to Piet. (Def.'s LR56.1(a)(3) St. ¶ 45.) After discussing the situation with Delvin (Deputy Director

---

[2]Plaintiff alleges that she only stated, "What do they do to messengers?" (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 39.)

of the Information Support Bureau), Niccolai recommended that Plaintiff be issued a forty-day suspension. (*Id.* ¶ 46.) Greg Newton (CMS attorney), however, contacted Niccolai and advised her that the discipline for an employee making threats in the workplace is termination. (*Id.* ¶ 47.) Newton further indicated that any threats of bodily harm were taken seriously as a result of the disturbing trend of workplace violence that has take place in recent years. (*Id.* ¶ 48.) Thus, given Plaintiff's prior history of discipline and the seriousness of her threats to Piet, Newton determined that termination was the only appropriate course of action. (*Id.* ¶ 49.)

As a result, on October 7, 1996, Plaintiff was terminated for violating Part III of the Code of Ethics as a result of threatening Piet, with bodily harm, on August 23 and 26, 1996. (Def.'s LR56.1(a)(3) St. ¶¶ 31, 32, 50.)

On March 20, 1997, Plaintiff filed a claim pursuant to the Workers' Compensation Act for the work-related injury she sustained on June 6, 1996. (Def.'s LR56.1(a)(3) St. ¶ 215.)

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC v. Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in that party's favor."

*Vanasco v. National-Louis Univ.*, 137 F.3d 962, 964 (7th Cir. 1998). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Linc*, 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505 or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## ANALYSIS

### I. PLAINTIFF'S MOTION TO STRIKE

Plaintiff moves to strike various paragraphs and exhibits from Defendant's Statement of Facts. (*See* Defendant's LR56.1(a)(3) Statement.) For the following reasons, the Court grants, in part, and denies, in part, Plaintiff's Motion to Strike.

Plaintiff first moves to strike paragraphs 51-54 by asserting that they are not relevant to her retaliation claims and provide no credible evidence relating to the issues in this lawsuit. (Pl.'s Mot. to Strike at 2.) Moreover, Plaintiff asserts that the Illinois Civil Service Commission's determination has neither precedential value nor does the Commission possess authority by which *res judicata* can be established regarding Plaintiff's pending retaliation claims. (*Id.*)

The Court finds, however, that although these paragraphs are not essential to the Court's decision herein, paragraphs 51-53 are relevant and admissible to show that: (1) Plaintiff appealed her termination decision, (2) an evidentiary hearing was held to determine if her termination was

appropriate; and (3) the Administrative Law Judge found that "[t]he totality of the circumstances indicates that, rather than any unfairness towards [Plaintiff] of which she makes numerous complaints, the evidence shows that Management has exercised great deliberation in fairness and caution in applying discipline and allow[ing] [Plaintiff] [the] full exercise of her rights in grieving all discipline. [Plaintiff] has not presented any credible evidence to the contrary." (Def.'s LR56.1(a)(3) St. ¶¶ 51-53.) Although the Civil Service Commission's determination has no precedential or *res judicata* effect, it is relevant and probative to show the appropriateness of Plaintiff's termination which was affirmed after an evidentiary hearing was held. The Court, however, strikes paragraph 54 of Defendant's Statement of Facts because it is not relevant to the issues in this case.

Plaintiff next moves to strike paragraphs 217-224 and Defendant's Exhibit C (municipal record in the matter of *Myria Taffe v. Xerox Corporation*, 98 M1-301470) and Exhibit Q (Plaintiff's 1998 discovery deposition) asserting that they relate to her negligence claim (personal injury) against Xerox Corporation. (Pl.'s Mot. to Strike at 2.) According to Plaintiff, Defendant cannot assert either collateral estoppel or *res judicata* doctrines because the state court determinations regarding her negligence claim for her work-related injury are not relevant to this litigation and Defendant was not a party to that proceeding. (*Id.*)

The Court, however, finds again that although these paragraphs are not essential to the Court's decision herein, paragraphs 217-224 (and Exhibit Q) are relevant and admissible. *See e.g.* Fed.R.Evid.801(d)(2). The June 6, 1996 work-related injury, while working for the Defendant, in which Plaintiff sued Xerox Corporation is the same type of injury that forms the basis of her state retaliatory discharge claim in this case. (Def.'s LR56.1(a)(3) St. ¶ 217.) For instance, when asked during her deposition in her suit against Xerox Corporation about the circumstances of Plaintiff's

leaving Defendant's employment, she responded that she left "because of Xerox's negligence." (*Id.* ¶ 220.) In addition, Plaintiff provided other reasons for her termination which included: (1) the Xerox repairman's conduct; (2) "[b]ecause if I didn't have an accident on the job, I would still be working" and (3) "the June 6, 1996, Xerox incident was the central reason for [her] termination." (*Id.* ¶¶ 221, 223-24.) Further, Plaintiff stated that Xerox "set the stage for [Defendant] to question my integrity, my character. I was in turn suspended for that and then it led up to termination." (*Id.* ¶ 220.) Thus, these statements are admissible and relevant regarding Plaintiff's belief as to the reasons for her termination and to rebut her speculation that Defendant discharged her based on its anticipation that she would file a claim under the Workers' Compensation Act. The Court, however, strikes Exhibit C (municipal record) of Defendant's Statement of facts because it is not relevant.

Plaintiff contends that paragraphs 212 and 213 and Defendant's Exhibit B (pp.1-2) should be stricken because they relate to a prior work-related injury she sustained on August 4, 1994, and the settlement agreement (workers' compensation claim) with the State of Illinois regarding this injury. (Pl.'s Mot. to Strike at 2-3.) Moreover, Plaintiff moves to strike paragraph 216 (and that portion of Exhibit B, pp. 3-5) which relate to her settlement agreement with the State of Illinois regarding her July 6, 1996 work-related injury. (*Id.* at 3.)

The Court agrees with Plaintiff and strikes paragraphs 212, 213, 216 and Defendant's Exhibit B (those portions relating to Plaintiff's prior workers' compensation claims/settlements) of Defendant's Statement of Facts. These paragraphs and subject exhibit are stricken because they are not relevant and do not relate to any of the claims at issue in this case.

Plaintiff further moves to strike Exhibit 1 to Frances Smith's Affidavit asserting that it contains job descriptions disseminated subsequent to Plaintiff's termination in 1996, which are not

relevant. (Pl.'s Mot. to Strike 3.) A fair reading and reasonable inference from the affidavit, however, is that the job descriptions in Smith's Affidavit, are those for Smith's position during the time Smith worked as a Communications Technician III. Although the job description(s) is not really essential to the Court's decision herein, because Plaintiff contends that she is similarly situated to Smith, these job descriptions are relevant to show that Smith and Plaintiff are not similarly situated in that they did not, *inter alia,* hold the same position or perform the same duties.

Plaintiff also contends that Defendant's Exhibit G, which contains policies that were in effect subsequent to Plaintiff's termination (amendments to current policies and/or new enactments) are not relevant to her claim. (Pl.'s Mot. to Strike at 3.) The Court finds, however, that the only document attached to Defendant's Exhibit G that is subsequent to Plaintiff's termination is entitled, "IDES Policies and Procedures Manual, Date[d] 10/14/99" which refers to a 1995 directive regarding the removal of all entertainment software from personal computers and local area networks. This document is therefore relevant to show the prohibition against employees using games on personal computers as well as Defendant's policy regarding appropriate employee use of its property and equipment. Because Plaintiff was disciplined for playing games on her personal, work computer, the Court finds that the documents attached to Exhibit G are relevant and constitute admissible evidence.

Plaintiff further asserts that paragraph 145 (which refers to paragraph 17 of Kenneth Piet's Affidavit and the June 13, 1996 email message from Terrault to Piet attached to his Piet's Affidavit) should be stricken as inadmissible hearsay because it does not fall within any exception to the hearsay rule and because it fails to satisfy the requirements of Fed.R.Civ.P.56. (Pl.'s Mot. to Strike at 3-4.) Specifically, Plaintiff moves to strike Piet's Affidavit statement regarding what Terrault

reported to Piet with respect to the computer games found on Plaintiff's computer. (*Id.*)

The Court agrees with Plaintiff and finds that the June 13, 1996 referenced email message from Terrault to Piet from an employee identified as "Ken S." constitutes inadmissible hearsay. The Court, therefore, strikes paragraph 145, paragraph 17 of Piet's Affidavit, and the June 13, 1996 email message from Terrault to Piet attached to Piet's Affidavit of Defendant's Statement of Facts.

Plaintiff moves to strike paragraphs 14, 25, 167, and 206 because Defendant has failed to provide citations to the record in support of these allegations. (Pl.'s Mot. to Strike at 4.) The Court, therefore, strikes paragraph 14 and 25 because they are not properly supported with record citations. The Court, however, finds that paragraph 167 (which also was not objected to) and 206 are properly cited and will not be stricken from Defendant's Statement of Facts.

Plaintiff further moves to strike paragraph 60 because it identifies the race of another employee and paragraph 78 because it provides information regarding whether or not the employee referenced in paragraph 60 filed a grievance after receiving disciplinary action. (Pl.'s Mot. to Strike at 4-5.) The Court agrees with Plaintiff and strikes paragraphs 60 and 78 of Defendant's Statement of Facts because they are not relevant to any of the issues in the case at bar.

## II.     TITLE VII RETALIATION CLAIM (COUNT I)

Title VII prohibits an employer from retaliating against an employee who has "opposed any practice made an unlawful employment practice by this subchapter, or . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under the statute. *See* 42 U.S.C. § 2000e-3(a). In order to demonstrate that Defendant has violated this provision of Title VII, Plaintiff may present either direct or indirect evidence of the employer's retaliatory intent. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). Because Plaintiff

has not offered any direct evidence of retaliation, she must satisfy the indirect method of proof. *Id.*

Under the indirect method, Plaintiff must first present sufficient evidence to establish a *prima facie* case that Defendant retaliated against her in violation of Title VII. *Hilt-Dyson*, 282 F.3d at 465. To establish a *prima facie* case of retaliation, under the new framework recently established by the Seventh Circuit, Plaintiff must demonstrated that: "(1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite meeting her employer's legitimate expectations, she suffered a materially adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Id.* (citation omitted).

Without direct evidence of retaliation, failure to satisfy any element of the *prima facie* case is fatal to Plaintiff's Title VII retaliation claim. *Hilt-Dyson*, 282 F.3d at 465. If Plaintiff establishes a *prima facie* case of retaliation, then the burden of production shifts to Defendant to produce a legitimate, non-discriminatory reason for its adverse employment action. *Id.* (citations omitted). If Defendant sets forth a legitimate, non-discriminatory justification for its action, the burden shifts back to Plaintiff to demonstrate that Defendant's proffered reason is a pretext for retaliation. *Id.* (citation omitted). If Plaintiff fails to establish pretext, her retaliation claim cannot survive summary judgment. (*Id.*)

### Federal Issue

Plaintiff initially alleges that Defendant retaliated against her for filing a Charge of Discrimination on July 19, 1993 (based on race and sex discrimination) with the Equal Employment Opportunity Commission ("EEOC") by subjecting her to disciplinary measures, primarily starting

in 1996, and eventually terminating her employment.[3]  (Am. Complt. ¶ 11; Pl.'s Mod. Mem. at 1.)

Plaintiff thus asserts that she has established a *prima facie* of retaliation and Defendant's basis for

terminating her is a pretext for retaliation. (Pl.'s Mod. Mem. at 14-24.)

## A.    Similarly Situated Employees[4]

Plaintiff initially argues that Defendant retaliated against her when it treated other employees

who were similarly situated more favorably.  (Pl.'s Mod. Mem. at 16-17.)  Plaintiff specifically

points to Defendant's failure to follow its own progressive corrective discipline policy as constituting

evidence that Defendant retaliated against her. (*Id.*)  Defendant's progressive corrective discipline

policy provides:

> Unless grounds clearly are present warranting immediate discharge or suspension
> pending decision on discharge, employees shall be subject to corrective discipline
> progressively utilizing counseling, warnings, and/or suspension, as the facts and
> circumstances dictate, prior to discharge.  If an employee's work or work-related
> conduct remains unacceptable after the application of progressive corrective
> discipline, such employee may be discharged in accordance with the appropriate
> rules. Ill.Admin.Code, tit. 80, § 302.626.

Thus, based allegedly on Defendant's failure to follow its own policy, Plaintiff avers that she was

unfairly subjected to more discipline than those employees who were similarly situated and,

ultimately, she was terminated. (*Id.*)

With regard to determining whether employees are similarly situated, the Seventh Circuit has

explicitly held that:

---

[3]Plaintiff filed a subsequent Charge of Discrimination with the EEOC on December 13,
1996 (alleging retaliation) which forms the basis of this lawsuit.  (Am. Complt. ¶ 2(A).)

[4]For purposes of this opinion, it is assumed *arguendo* that the first three elements of a
*prima facie* case exist herein.  Defendant does not dispute the first two elements of a *prima facie*
case and has not filed any reply as to the third element.

> [I]n disciplinary cases–in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason–a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct. This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.

*Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000) (citations omitted)(explaining that an employee must show substantial similarity in order to meet the similarly situated requirement); *Peters v. Renaissance Hotel Operating Co.*, -- F.3d --, No. 00-4026, 2002 WL 31102308, at *7 (7th Cir. Sept. 20, 2002)(emphasizing that *Radue's* requirements must be met in establishing similarly situated comparable employees). In addition, the Seventh Circuit has held that two employees must hold the same or equivalent positions at the time of the employment decision in question. *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 651 (7th Cir. 2001) (citation omitted).

Plaintiff argues that John Hazelton, Frances Smith, and Lela Delaney were similarly situated because they reported to Terrault and were governed by the same policies, including Defendant's Code of Ethics. (Pl.'s Mod. Mem. at 18.) The record, however, reflects that Smith and Hazelton were not similarly situated because they: (1) held the different position of Communications Technician III in the Network Control Division (Information Services Bureau); (2) were bargaining unit employees; (3) were not subject to the same standards as Plaintiff; and (4) reported directly to Delaney, the Management Systems Specialist for the Network Control Division.[5] (Def.'s

---

[5]Plaintiff, however, asserts that based on Defendant's March 29, 1996 memo, Hazelton and Smith reported directly to Terrault. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 99; Def.'s Ex. E.) Even assuming that Plaintiff is correct and Hazelton and Smith did report to Terrault (rather than Delaney), they still cannot be viewed as being similarly situated because they held different positions, were bargaining unit employees, and were subject to different standards. (Def.'s

LR56.1(a)(3) St. ¶¶ 98-100, 104-105.) Moreover, Delaney was not similarly situated because she

held a supervisory position in the Network Control Division, was a bargaining unit employee and

was subject to different standards than that of Plaintiff.[6] (Smith Aff. ¶¶ 7, 9.) In comparison,

Plaintiff, who was a Methods and Procedures Analyst III (in the User Support Services division), was

a merit compensation employee, and reported, then, to Greenspon. (*Id.* at ¶¶ 11, 12, 20, 27, 80.) *See*

*e.g., Radue*, 219 F.3d at 617-18 (finding that "a plaintiff must show that he is similarly situated with

respect to performance, qualifications, and conduct").

Plaintiff also contends that she was treated differently than other similarly situated

employees; namely, Delaney, Smith and Hazelton who, Plaintiff asserts, followed the same call-in

procedures for which Plaintiff was disciplined. (Pl.'s Mod. Mem. at 18-19.) For instance, on July

19, 1996, Plaintiff received a ten-day combined suspension for failing to obey a directive to report

her absences to Greenspon and for playing games on her personal, work computer. (Def.'s

LR56.1(a)(3) St. ¶ 148.) Plaintiff contends, however, that Delaney only received a reprimand for

taking Plaintiff's calls on June 7 and 10, 1996. (Def.'s Resp. to Pl.'s LR56.1(b)(3)(B) ¶ 280.)

Delaney, however, as noted *supra,* was not disciplined for the same offense as Plaintiff and Delaney

is not similarly situated when compared to Plaintiff because Delaney is in a supervisory position and

subject to different employment terms. Moreover, Smith and Hazelton are also not similarly situated,

and furthermore, they were not disciplined because they actually and properly reported their absences

---

LR56.1(a)(3) St. ¶¶ 98-100, 105.)

[6]From May 1994 to April 1, 1996, Plaintiff reported to Terrault. (Def.'s LR56.1(a)(3) St.
¶ 28.) The Court notes that Defendant's March 29, 1996 memo indicates that Delaney began
reporting to Greenspon on April 1, 1996. Even if Delaney subsequently reported to Greenspon,
as Plaintiff did, she still could not be viewed as being similarly situated, for the reasons recited
above.

to their supervisor, Delaney. (*Id.* ¶ 277.) The Court, therefore, finds that Plaintiff has failed to show that these employees, or any others, were similarly situated and treated more favorably than she was for insubordination in not calling in to the appropriate supervisor, after being ordered to do so, and for playing games on work computers.

Plaintiff next points to Tom Mierweza (Employment Security Tax Auditor II) and Leajune Fantroy (Accountant III) as similarly situated employees who were disciplined, but not terminated for violating the Code of Ethics. (Pl.'s Mod. Mem. at 21-22; Pl.'s Ex. 22.) Plaintiff also points to John Deifel, Verletta Moody, Erice Magee, and John Hazelton to show that she was treated more harshly for insubordination than these employees. (*Id.* at 22-23.) The Court notes, however, that based on the record, these employees were not similarly situated to Plaintiff with respect to performance, qualifications and conduct. *Radue*, 219 F.3d at 617-18. Moreover, these employees did not hold the same position as Plaintiff, did not have the same supervisor, were not subject to the same standards, and did not engage in similar conduct. *See e.g., Hoffman-Dombrowski*, 254 F.3d at 651.

The Court first notes that Mierweza *inter alia* was not treated more favorably than Plaintiff. Mierweza was discharged for cause on August 23, 1996 (for violating Parts III and V of the Code of Ethics) after he intimidated a client by shouting and disrupting her work place and advised her that he "would have peoples jobs" above him, and that he had a family and children who would not go hungry even if he had to settle this matter with a "457 magnum." (Pl.'s LR56.1(b)(3)(B) ¶¶ 299, 300 and Def.'s Resp.) Mierweza's disciplinary record included a written reprimand for insubordination, a notation regarding the improper release of confidential information (which resulted in no discipline), and a three-day suspension for failing to perform job duties, gross negligence in the

14

performance of job duties, and insubordination. (*Id.* ¶ ¶ 299, 302.) With respect to Mierweza's discharge, he filed a grievance, but ended up resigning as part of the grievance settlement. (Pl.'s LR56.1(b)(3)(B) ¶301 and Def.'s Resp.) Consequently, Plaintiff cannot establish that Mierweza was a similarly situated employee who was treated more favorably because *inter alia* he held a different position, worked in a different division, and was disciplined for different conduct than that of Plaintiff (and ultimately resigned as a result).

Similarly, with regard to Fantroy, on May 6, 1997, Niccolai (Labor Relations Manager) requested discipline for her in the form of a suspension pending her discharge. (Pl.'s LR56.1(b)(3)(B) ¶¶ 296, 297.) Niccolai requested disciplinary action because Fantroy was alleged to have "grabbed the right side of her manager's neck and clenched her fist in an attempt to punch him . . . [She] purportedly stated during this physical assault that she was going to 'waste' her manager." (*Id.* ¶ 296.) However, three days after the disciplinary request had been made, Fantroy resigned. (*Id.* ¶ 298 and Def.'s Resp.) Herein, Plaintiff cannot show that Fantroy was a similarly situated employee who was treated more favorably because like Mierweza, because Fantroy held a different position, worked in a different division, and engaged in different conduct than that of Plaintiff (and ultimately resigned as a result).

Next, Plaintiff identifies Deifel, Moody, Magee and Hazelton as allegedly similarly situated employees that were treated more favorably than she was for insubordination. (Pl.'s Mod. Mem. at 23.) Deifel, for example, was a Field Office Supervisor who received a seven day suspension, on August 7, 1995, for violating the Code of Ethics when he yelled at an employee, slung a file at a desk tray, and walked away saying "[i]t is stupid to do what the Region says, we should be following the law, we are cheating the claimant." (Pl.'s LR56.1(b)(3)(B) ¶ 324 and Def.'s Resp.) Deifel had

also received a prior written reprimand for a similar infraction involving "loud argumentative outbursts." (*Id.*) Herein, Deifel was not similarly situated because he held a different position, worked in a different division and was disciplined for a different type of conduct. Moreover, the Court notes that Deifel's insubordinate conduct did not involve disobeying a supervisor's direct order or a charge of threatening his supervisor.

Moody was an Employment Security Service Representative who was suspended for five days on July 31, 1996 for insubordination for failing to follow her supervisor's directive. (Pl.'s LR56.1(b)(3)(B) ¶ 325 and Def.'s Resp.) Specifically, when Moody's supervisor ordered her to serve a client, Moody shouted back that it was 5 p.m. and she was leaving, and continued to yell that "[i]t's 5 p.m. and I'm off . . . You don't tell me what to do . . . Are you trying to control me, you can't control me" and then she left the office. (*Id.*) Moody's prior discipline included: (1) a one-day suspension for unprofessional conduct towards her supervisor and insubordination; and (2) counseling for unprofessional behavior involving a client. (*Id.*) Moreover, after Moody's five-day suspension, she received a fourteen-day suspension for insubordination and unacceptable job performance. (*Id.*) As is the case with Mierweza, Fantroy and Deifel, Moody is not similarly situated because she held a different position, worked in a different division and was disciplined for a different type of conduct. Moreover, like Deifel, Moody's conduct did not involve disobeying a supervisor's direct order or a charge of threatening her supervisor.

Magee (position not identified in the record) is also not similarly situated to Plaintiff. In December 1996, Magee was suspended for eight days for insubordination for failing to follow his supervisor's orders and throwing papers on the chair in the front of his desk in the presence of his supervisor and a client. (Pl.'s LR56.1(b)(3)(B) ¶ 326.) Magee's prior discipline included: (1) a

combined twenty-one day suspension for using the office fax machine to transmit office information to third parties for non-business reasons and for falsifying official documents. (*Id.* ¶ 326 and Def.'s Resp.) Besides Magee's position being unidentified for comparison purposes here, Magee *inter alia* had no prior discipline for insubordination up to that point. Plaintiff thus cannot argue that she was more severely disciplined for her more numerous insubordinations. Moreover, Plaintiff was ultimately disciplined for different conduct than Magee, including that Magee was never charged with threatening a supervisor.

Plaintiff further asserts that Hazelton did not receive any discipline when he engaged in insubordinate behavior, wherein he refused to follow his supervisor's directive to remove his feet from his desk and wake-up. (Pl.'s LR56.1(b)(3)(B) ¶ 327 and Def.'s Resp.) As discussed, *supra*, Hazelton is not similarly situated when compared to Plaintiff because he held a different position, was located in a different division, reported to a different supervisor and engaged in different conduct.

Based on the record, the Court further notes that Plaintiff admitted (as of the time of her deposition) that she did not know of any other similarly situated employee(s) who received better or more favorable treatment for the type of conduct she was disciplined for regarding her January 11, 1996 written reprimand (calling co-worker name/threatening behavior); her July 18, 1996 ten-day suspension (playing a game on her work computer); and her August 26, 1996 fifteen-day suspension (refusing to obey a supervisory directive to submit an original spreadsheet and working notes). (Def.'s LR56.1(a)(3) St. ¶¶ 71, 159, 195 and Pl.'s Resp.) Also, as discussed *supra,* Plaintiff has failed to point to any similarly situated employee(s) who received more favorable treatment for comparable conduct for which she was disciplined for regarding her February 15, 1996 one-day

suspension (refusing to obey a supervisory directive not to interact with a co-worker); her August 14, 1996 written reprimand (returning late from lunch); and her October 7, 1996 termination (threatening Piet).

In summary, the Court finds that because Plaintiff has failed to identify any similarly situated employee(s) with respect to performance and qualifications who dealt with the same supervisor, were subject to the same standards and engaged in similar conduct, who were treated more favorably, she cannot establish a *prima facie* case of retaliation under Title VII because she has not met the essential fourth element of such a case. Consequently, Plaintiff's assertion that Defendant failed to follow its progressive corrective discipline policy (when instituting discipline against her) is unavailing because Plaintiff has failed to identify even one similarly situated employee who received lesser discipline (such as counseling, warnings or shorter suspensions) for similar conduct as a result of Defendant's policy.

### B.    Pretext

Even assuming *arguendo* that Plaintiff can make the requisite *prima facie* showing, she would still need to demonstrate that Defendant's proffered reason(s) for its disciplinary decisions and ultimate termination are a pretext for retaliation.

"Pretext . . . means a lie, specifically a phony reason for some action." *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 348 (7th Cir. 1997). Plaintiff need only "produce evidence from which a rational factfinder could infer that [Defendant] lied about its proffered reasons . . . " *Weisbrot v. Med. College of Wis.*, 79 F.3d 677, 682 (7th Cir. 1996). An employee may establish pretext by proving one of the following: "(1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the [adverse action]; or (3) the proffered reasons were

18

insufficient to motivate the [adverse action]." *Wolf v. Buss, Inc.,* 77 F.3d 914, 919 (7th Cir. 1996). "The pretext inquiry focuses on the honesty–not the accuracy–of the employer's stated reason for the [adverse job action]." *Gibson v. AT & T Corp.,* No. 97 C 0501,1998 WL 774687, at * 8 (N.D. Ill. Oct. 28, 1998) (citation omitted). Moreover, "[t]he fact that [an] employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual." *Essex v. United Parcel Serv., Inc.,* 111 F.3d 1304, 1310 (7th Cir. 1997). An employer need only supply "an honest reason [for termination], not necessarily a reasonable one." *Flores v. Preferred Technical Group,* 182 F.3d 512. 516 (7th Cir. 1999).

The Court finds that Defendant has proffered legitimate, non-discriminatory reasons for each disciplinary measure it took against Plaintiff. Morever, as demonstrated by the record, Defendant followed its progressive corrective discipline policy by increasing Plaintiff's discipline for subsequent infractions. For instance, with regard to Plaintiff's August 26, 1996 suspension, Niccolai recommended a fifteen day suspension for insubordination because she "had already been suspended several times, and it was . . . incremental. The prior suspension had been ten days, and it was more of the same." (Def.'s LR56.1(a)(3) St. ¶ 190.) Prior to that, Plaintiff had received two progressive disciplinary measures, commencing with a written reprimand (January, 1996) for calling a co-worker a "big slab of pork" and telling her that she would "bust a cap in her ass." Consequently, a reasonable inference can be made that the increase in Plaintiff's discipline was a direct result of Defendant following its progressive corrective discipline policy and not due to retaliatory intent on the part of Defendant. Moreover, as discussed *supra,* Plaintiff has failed to identify any similarly situated employees who were treated more favorably by receiving lesser discipline for similar types of conduct.

The Court further finds that Defendant's reason for discharging Plaintiff on October 7, 1996 for threatening behavior has not been shown to be pretextual. On Friday, August 23, 1996, when Piet (Plaintiff's manager) served her with a CMS-2 form informing her of a suspension commencing Monday, August 26, 1996, Plaintiff, according to Defendant, stated, "Now I understand why postal employees shoot their managers." (Def.'s LR56.1(a)(3) St. ¶ 33.) Plaintiff denies using the word "shoot," but admits stating, "Now I understand why postal workers do what they do." (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶¶ 34-35.) Though Plaintiff alleges that this was meant to be non-threatening Plaintiff admits that her statement was explicitly referring to how postal workers are "driven to do violence." (Def.'s LR56.1(a)(3) St. ¶ 41.) On August 26, 1996, Plaintiff came to work in disregard of her suspension and was directed by Piet to go home. (Def.'s LR56.1(a)(3) St. ¶ 39.) When she argued, Piet told her he was just a messenger to which Plaintiff, per Defendant, responded, "You know what they do to the messenger don't you?" although Plaintiff admits only to saying "What do they do to the messengers?" (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶¶ 39-40.) It is undisputed that Piet felt he was personally in danger and considered Plaintiff's comments to be threats.[7] (*Id.* ¶ 44.) *See Merheb v. Illinois State Toll Highway Authority,* 267 F.3d 710, 713-14 (7th Cir. 2001)(finding that a misunderstanding that is perceived by coworkers as threatening was insufficient to overcome summary judgment in favor of the employer). Moreover, even though Niccolai recommended a forty-day suspension for Plaintiff's threatening conduct towards Piet, Greg Newton (CMS attorney) advised that the discipline for an employee making threats in the workplace is termination. (Def.'s LR56.1(a)(3) St. ¶¶ 47.) Newton further indicated that any threats of bodily

---

[7]Parenthetically, Plaintiff indisputably made statements to Piet, and those statements, even taking Plaintiff's versions of same, could be reasonably perceivable to a recipient, as implicitly, if not explicitly threatening.

harm were taken seriously in light of the recent trend of workplace violence. (*Id.* ¶¶ 48, 49.) *See e.g.,* *Bottoms v. Illinois Dep't of Human Services,* 174 F.Supp.2d 758, 765 (7th Cir. 2001)(citations omitted).

Therefore, the Court finds that Defendant has produced legitimate, nondiscriminatory reasons for its disciplinary measures and ultimate discharge of Plaintiff. Moreover, Plaintiff has failed to adduce any evidence in the record demonstrating that Defendant's proffered reason(s) is a lie or pretext for retaliating against her for filing a Charge of Discrimination with the EEOC. Also, because Plaintiff cannot establish that Defendant's reasons for disciplining and discharging her were factually baseless or not the actual motivation for it's actions, she cannot establish pretext herein. Furthermore, as Piet indicated he honestly believed that he was in danger and considered Plaintiff's comments to be threats. (Def.'s LR56.1(a)(3) St. ¶ 44.) *See e.g., Gibson v. AT & T Corp.* 1998 WL 774687, at * 8 ("[t]he pretext inquiry focuses on the honesty–not the accuracy–of the employer's stated reason for the [adverse job action]"). Thus, as clearly indicated by the record, Plaintiff was discharged for her threatening behavior and not as a pretext for retaliation for Plaintiff filing a race and sex discrimination charge nearly three and a quarter years earlier.

### Summary

Based on the foregoing, when viewing the evidence in the light most favorable to Plaintiff, a genuine issue of material fact does not exist and a fair-minded jury could not return a verdict for her on the evidence presented as it relates to her Title VII retaliation claim.

## III.    STATE RETALIATORY DISCHARGE CLAIM (COUNT II)

The Illinois Workers' Compensation Act makes it unlawful for an employer to retaliate against employees for exercising their rights or remedies granted by the statute. 820 ILCS 305/4(h).

Illinois has recognized an independent cause of action for retaliatory discharge for employees whose employment is terminated as a result of their exercise of rights under the statute, including the right to file a workers' compensation claim.[8] *See Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353, 357-58 (1978); *Jacobson v. Moga,* 185 Ill.2d 372, 235 Ill.Dec.936, 706 N.E.2d 491, 492-93 (Ill. 1998). Thus, a retaliatory discharge claim is allowed in a situation where an employee is discharged for filing, or in anticipation of the filing of, a claim under the Workers' Compensation Act, 820 ILCS 305/1 *et seq. Jacobsen,* 706 N.E.2d at 493; *Hinthorn v. Rolands of Bloomington, Inc.,* 119 Ill.2d 526, 116 Ill.Dec. 694, 519 N.E.2d 909, 911 (1988).

To establish a cause of action for retaliatory discharge, "[Plaintiff] must prove: (1) that [she] was an employee before the injury; (2) that [she] exercised a right granted by [the Illinois] Workers' Compensation Act; and (3) that [she] was discharged and that the discharge was causally related to [her] filing a claim under the Workers' Compensation Act." *Borcky v. Maytag Corp.,* 248 F.3d 691, 695-96 (7th Cir. 2001) (citation omitted). The burden of proving the elements of the cause of action remains with Plaintiff at all times. *Id.* at 696 n.5. Furthermore, under Illinois law, "[t]he element of causation is not met if [Defendant] has a valid, nonpretextual basis for discharging [Plaintiff]." *Paz v. Commonwealth Edison,* 314 Ill.App.3d 591, 247 Ill.Dec. 641, 732 N.E.2d 696, 701 (2nd Dist. 2000) (*citing Hartlein v. Illinois Power Co.,* 151 Ill.2d 142, 176 Ill.Dec. 22, 601 N.E.2d 720, 728 (1992).[9]

---

[8]Illinois does not recognize a cause of action for retaliatory conduct short of discharge. *Zimmerman v. Buchheit of Sparta, Inc.,* 164 Ill.2d 29, 206 Ill.Dec. 625, 645 N.E.2d 877, 881 (Ill. 1994)(citations omitted); *see also Pope v. Inland Property Management Inc.,* 878 F.Supp. 1114, 1117 (N.D. Ill. 1995) (noting that Illinois courts have expressly refused to expand the theory of retaliatory discharge beyond the element of actual termination) (citations omitted).

[9]In view of the Court's ruling herein, *infra* it is not necessary to address Defendant's contention that Plaintiff cannot assert an Illinois retaliatory discharge claim because she was not

(continued...)

Plaintiff alleges that Defendant disciplined and discharged her because it anticipated that she would file a claim under the Illinois Workers' Compensation Act. (Pl.'s Mod. Mem. at 1.) Plaintiff argues that although she did not file a workers' compensation claim prior to her discharge, she exercised her rights in obtaining workers' compensation benefits by notifying Defendant's management; namely, Terrault, Piet and Greenspon that she had suffered a work-related injury; consequently, they were aware of her injury prior to her discharge. (*Id.* at 11.) In support of this assertion, Plaintiff points to the fact that her manager, Terrault, threatened to discharge her employment on August 5, 1996, just two months after she had sustained her work-related injury. (*Id.*) In addition, Plaintiff contends that Defendant's failure to follow its own policy regarding work-related injuries constitutes evidence that Defendant retaliated against her. (*Id.* at 12.) Further, Plaintiff argues that the temporal proximity between the time she sustained her work-related injury on June 6, 1996 and the discipline (and ultimate discharge on October 7, 1996) she received is indicative of the fact that Defendant retaliated against her. (*Id.* at 13-14.)

The Court finds Plaintiff's arguments unavailing. First, the Court notes that, as a threshold matter, Plaintiff has presented no evidence, other than her own, respectfully, self-serving testimony, that Defendant discharged her in anticipation of filing a claim or exercising her rights under the Illinois Workers' Compensation Act. Even though Defendant's management was fully aware of Plaintiff's work-related injury, there is no reasonable inference that can be made based on the evidence in this case that would warrant a finding that Defendant's management discharged Plaintiff because it anticipated that she *might*, at some point in time, *possibly* decide to file a workers' compensation claim.

---

[9](...continued)
an employee-at-will.

Next, the Court finds Plaintiff's contention that Defendant retaliated against her when Terrault allegedly threatened to discharge her employment unavailing. Based on the record, there is no evidence to support Plaintiff's assertion that Terrault ever threatened to discharge her on August 5, 1996, and moreover, if he did, whether this alleged threat was based on the future possibility that she might file a workers' compensation claim or for some other reason. (Pl.'s LR56.1(b)(3)(B) ¶ 330 and Def.'s Resp.) As discussed *supra,* Plaintiff had a myriad of disciplinary infractions as a result of insubordination and threatening conduct that ultimately lead to her discharge. Furthermore, as noted there is no evidence in this case, other than Plaintiff's own, respectfully, self-serving testimony, that Defendant discharged her in anticipation of her filing a claim or for allegedly exercising her rights under the Illinois Workers' Compensation Act.

The Court further finds Plaintiff's contention that Defendant retaliated against her by not following its own policy regarding work-related injuries without merit. According to Plaintiff, the Department failed to follow its policy requiring that a "request [for leave] must be accompanied by a medical statement relative to the injury which specifies the exact number of days needed for the absence." (Def.'s Resp. to Pl.'s LR56.1(b)(3)(B) ¶ 335.) As demonstrated by the record, Plaintiff submitted a "Release/Restriction Form" that was signed by her physician on June 10, 1996 stating that he saw her on June 6, 1996 and would see her again on June 14, 1996. (Pl.'s Ex. 17A.) Because the form did not specify the number of days Plaintiff needed to take off as a result of her injury, Defendant subsequently denied her request for excused leave on June 7, 10 and 14. (Def.'s Mem. at 4-5.) Plaintiff, however, contends that another form, a CMS Physician's Statement, dated June 19, 1996, contained the statement "June 7 to June 10 Pt. at home;" thereby specifying the number days needed for her absence as required by Defendant's policy. (Pl.'s Mod. Mem. at 12.)

The Court, however, notes that the June 19, 1996, CMS Physician's Statement, which was dated almost two weeks after Plaintiff's injury, indicated that she was "able to go to work" on June 7, 1996 and further, the annotation that Plaintiff had been at home from June 7 through June 10 is not indicative of the number of days Plaintiff needed to be absence from work as a result of her injury.[10] Rather, the statement simply states that Plaintiff was at home from June 7 through June 10. Therefore, the Court finds that Defendant's denial of Plaintiff's request for excused leave was consistent with its subject request for leave policy and is not a pretext for retaliating against her in anticipation of the possibility that she might file a workers' compensation claim. Consequently, there is no casual connection between Plaintiff's allegation that, as a result of exercising her rights (short of actually filing a claim), under the Illinois Workers' Compensation Act, that Defendant retaliated against her by not following its own policy regarding approved leave for work-related injuries.

The Court next finds Plaintiff's argument that Defendant's retaliation is evidenced by the temporal proximity between Plaintiff's work-related injury and her subsequent discipline/discharge unmeritorious. According to Plaintiff, she received more discipline after sustaining her work-related injury than at any other time during her eighteen year employment with Defendant. (Pl.'s Mod. Mem. at 13.) In fact, Plaintiff states that she was discharged within four months after she sustained her work-related injury. (*Id.*) The Court, however, finds that when applying relevant case law, a casual connection cannot be inferred between the occurrence of the alleged protected activity (Plaintiff's exercising of her rights after sustaining her work-related injury on June 6, 1996) and her discharge on October 7, 1996 due to the substantial lapse of time between the two events. *See e.g., Dey v. Colt*

---

[10]Moreover, Plaintiff's Initial Worker's Compensation Medical Report dated August 2, 1996 and signed by the same physician as the June 19, 1996 statement estimated that she could return to work without restrictions. (Pl.'s Ex. 20B.)

*Constr. & Dev. Co.,* 28 F.3d 1446, 1458 (7th Cir. 1994)(a casual link may be established by showing

that a plaintiff's discharge took place on the "heels of [the] protected activity"); *Filipovic v. K & R*

*Express Sys., Inc.,* 176 F.3d 390, 398 (7th Cir. 1999) (plaintiff could not establish a causal connection

between the occurrence of the protected activity and adverse action because of a four month time

lapse).

The Court further notes as discussed in detail (pp. 18-21 *supra*) that Defendant clearly had

a valid, nonpretextual basis for discharging Plaintiff. *See e.g. Paz,* 732 N.E.2d at 701.

In view of the foregoing, the Court finds that Plaintiff has failed to establish a *prima facie*

case of retaliation under Illinois law. In sum, when viewing the evidence in the light most favorable

to Plaintiff, a genuine issue of material fact does not exist and a fair-minded jury could not return

a verdict for her on the evidence presented as it relates to her state law retaliation claim.[11]

## CONCLUSION[12]

---

[11]As seen, both sides argued the merits of the state retaliatory discharge claim herein.
Neither party raised the issue of whether supplemental jurisdiction would remain as to the state
claim if the Title VII federal retaliation claim was dismissed. In the exercise of its discretion,
considering *inter alia* the advanced stage of the case, the Court has entertained supplemental
jurisdiction over the state law claim.

[12]In view of the Court's ruling herein, it is deemed unnecessary to consider Plaintiff's and
Defendant's other arguments raised herein.
Too, Defendant argues that Plaintiff's retaliation claims are barred by the doctrine of *res
judicata* because there was a judgment on the merits in *Taffe v. IDES,* 96 C 7195 (N.D. Ill. Sept.
1, 1998), the parties in the two cases are identical, and both matters arise from the same core of
operative facts: Plaintiff's employment and the discipline issued by Defendant. (Def.'s Reply at
15.) The Court, however, notes that on February 8, 2000, it previously ruled on this very issue
when it denied Defendant's Motion to Dismiss; therefore, it is not necessary to address that
argument further here.
In its Reply brief, Defendant has abandoned its argument that Plaintiff is barred by the
statute of limitations from bringing her state law retaliation claim. *See e.g., Henon v. Lever Bros.
Co.,* 114 Ill.App.3d 608, 70 Ill.Dec. 322, 449 N.E.2d 196, 197 (1st Dist. 1987) (holding that a five
(continued...)

Accordingly[13], Defendant's Motion for Summary Judgment is granted and the cause is dismissed with prejudice.

ENTER:

*Ian H. Levin*

IAN H. LEVIN
**United States Magistrate Judge**

**Dated: October 23, 2002**

---

[12](...continued)
year statute of limitations applies to retaliatory discharge claims).

[13]Plaintiff's Motion to Strike is denied, except as to paragraphs 14, 25, 54, 60, 78, 145 (which includes paragraph 17 of Kenneth Piet's Affidavit and the June 13, 1996 email message from Terrault to Piet attached to Piet's Affidavit), 212, 213, 216 and Exhibit B (those portions relating to Plaintiff's prior workers' compensation claims and settlements), and Exhibit C (municipal record) of Defendant's Statement of Facts.